FD-302 (Rev 5-8-10)

- 1 of 6 -

 **Official Record**

## FEDERAL BUREAU OF INVESTIGATION

Date of entry  06/01/2015

LINDA MANGANO, date of birth: 03/07/1963, Social Security: 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, home address: 7 Nicholas Court, Bethpage, New York, was interviewed, pursuant to a proffer agreement, by FBI SA Kenneth F. Hosey, FBI SA Laura Spence, IRS Investigator Dan Schleyer, EDNY AUSA Catherine Mirabile, EDNY AUSA Ray Tierney, and EDNY AUSA Lara Gatz at the office of the United States Attorney for the Eastern District of New York (EDNY). MANGANO was represented by attorney John F. Carman, telephone: 516-683-3600, cellular telephone: 516-398-1424. A summary of the interview follows:

Employment history:

After graduating Bethpage High School, MANGANO began her employment as a receptionist for a local print shop. She later became the art director and performed graphic design for the print shop. MANGANO worked at this job until her children were born.

Around 2009 or 2010, MANGANO began her employment for SYNTAX COMMUNICATIONS. MANGANO performed public relations work for several municipalities and school districts, including the Lindenhurst School District. MANGANO worked on a "case by case" and "job by job" basis, receiving $1,000 per month in compensation. She had no formal employment agreement with SYNTAX. Her point of contact was TERRY GILBERTI.

Beginning in approximately March 2010, MANGANO began her employment for HARENDRA SINGH. SINGH asked MANGANO to perform public relations work and marketing for the WATER'S EDGE restaurant. MANGANO worked for SINGH until March or April 2014. MANGANO's employment for SINGH is set forth in greater detail below.

Approximately three or four years ago, MANGANO began her employment for BEACON in West Hempstead, New York. MANGANO received "copy" and created pages for BEACON. MANGANO used Photoshop software as part of her employment. She also performed editorial composition. The editor of BEACON

---

Investigation on  05/20/2015  at  Central Islip, New York, United States (In Person)

File # ████████                                                      Date drafted  05/20/2015

by  HOSEY KENNETH F, SPENCE LAURA ANN

This document contains neither recommendations nor conclusions of the FBI  It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

LM000020

was BARBARA YOHE and the owner was KATHLEEN HAGEL. MANGANO had no formal employment agreement and worked three or four days per week from home. MANGANO was paid $55 per page.

MANGANO has also run the Bethpage Tribune, a weekly local newspaper, for many years. MANGANO estimated it takes her two or three hours to put the paper together but she receives "copy" all week long. MANGANO stated she is "always on", regarding her work on the paper.

Since July 2014, MANGANO has worked for PORTECK (phonetic) in Jericho, New York. PORTECK is a medical billing and "revenue cycle management" company. PORTECK performs billing for and credentialing of doctors. MANGANO is the director of marketing and public relations. The CEO of PORTECK is ARVIND WALIA. MANGANO was referred to the job by ANICH (phonetic) Last Name Unknown (LNU) and SERGE. After beginning her employment, PORTECK was taken over by ORION. MANGANO was originally a salaried employee making approximately $75,000 per year. After ORION took over, she became a consultant paid $5,000 per month. MANGANO performs a lot of the work from her home but also spends approximately two days per week in the office. MANGANO characterized the amount of time per week she spent working for PORTECK/ORION as "more than a part time" job.

MANGANO also does "event execution" for ELLIE CUNNINGHAM. MANGANO arranges corporate parties/meetings and charity races. MANGANO is paid approximately $350 to $400 per day. MANGANO was referred to the job with CUNNINGHAM by her friend KATHY COMERFORD.

HARENDRA SINGH

MANGANO has know HARENDRA SINGH for approximately twenty five years. She first met SINGH at his restaurant. Since then, they have developed a close friendship. MANGANO characterized their relationship as that of a brother and sister. MANGANO stated, "He loves me and I love him". Prior to her employment with SINGH, MANGANO helped SINGH in matters relating to his business. MANGANO provided advice to SINGH as a friend and did not receive compensation. For example, MANGANO helped SINGH with the t-shirt logo for SINGH's restaurant NO BANANAS.

In 2010, while SINGH was in the living room of MANGANO's home, SINGH told MANGANO he needed help running events at the WATER'S EDGE and offered her a job. SINGH also wanted MANGANO to provide advice on graphics and public relations. MANGANO agreed to work for SINGH. MANGANO did not discuss the salary for her employment with SINGH because she considered the job as working with family. A few days later, SINGH told MANGANO her salary would be around $85,000 to $88,000.

FD-302a (Rev. 05-08-10)

Continuation of FD-302 of  Interview of Linda Mangano 05/20/2015  , On  05/20/2015  , Page  3  of  6

MANGANO went to the WATER'S EDGE "quite a few times" when she first started work. When asked how many was quite a few, MANGANO stated three or four times. SINGH sought to have an event which would attract people from the Long Island City area to the WATER'S EDGE. SINGH told MANGANO he wanted her to work with JOE SCALICE. In the beginning, MANGANO also met with SCALISE at the WOODLANDS which was a closer commute for MANGANO. MANGANO was not friends with SCALICE prior to beginning her employment with SINGH. When MANGANO met with SCALICE, SINGH came in and out of the meetings.

MANGANO recalled being involved in two events as part of her employment for SINGH. One was a women's event. The honoree at the event may have been named VICKI. MANGANO helped design the invitations for the event. She provided the invitation design to either SCALICE or possibly to SINGH. MANGANO recalled emailing the invitation to SCALICE at some point. MANGANO's email is nuz2u@aol.com. MANGANO did not recall ever emailing SINGH claiming she "sees him enough" and "She speaks to him" such that she did not have to email him. MANGANO estimated spending approximately a couple of weeks planning this event. MANGANO spoke to SINGH in person when "touching base" regarding the event. MANGANO attended the event along with her mother-in-law, and ED MANGANO's aunt. RUBY SINGH also attended the event. MANGANO could not recall the other event with which she was involved as part of her employment for SINGH.

MANGANO also conducted a direct mailing program as part of her employment for SINGH. MANGANO designed a glossy stock post card for the WATER'S EDGE which read, "The only thing we overlook is Manhattan". After designing the post card, MANGANO likely provided it to SCALICE. When asked how much time she spent designing the card, MANGANO stated the card may have taken her a day. MANGANO claimed to first have visualized the post card and then played with her design for a while after. MANGANO claimed, "It's a process". MANGANO did not recall the approval process for the post card but assumed SINGH was the one who ultimately approved it. Approximately one hundred to one hundred and fifty people attended the event.

MANGANO also claimed to create graphics for SINGH's restaurants including the development of concepts and names. MANGANO designed a two sided menu for SINGH's pizzeria BESI. MANGANO performed all the revisions and changed the layout of the menu. MANGANO used Quark and Photoshop to create her designs. When asked how much time it took her to design the menu, MANGANO claimed there were constant changes and it took her a couple of days. In regards to the BESI menu, MANGANO was in direct contact with SINGH. SINGH came to MANGANO's house and they discussed the menu. SINGH brought a hard copy of the existing menu to MANGANO's house from which she made changes. When asked if she did the printing, MANGANO stated she did

LM000022

FD-302a (Rev. 05-08-10)

Continuation of FD-302 of  Interview of Linda Mangano 05/20/2015  , On  05/20/2015  , Page  4 of 6

not. A company known as BULLFROG printed the menus. MANGANO sent her changes to the menu to BULLFROG or to SINGH directly. MANGANO also dealt with a woman named TARA, who worked at SINGLETON'S in connection with this project.

MANGANO also performed work on the SINGLETON'S menu, organizing it, and making changes to the layout and coloring. SINGH was MANGANO's point of contact at SINGLETON'S in connection with the redesign of the menu. SINGH would "almost always" come to MANGANO's house to see the changes MANGANO had made to the menu design.

MANGANO has been to BESI and to SINGLETON'S both for her employment with SINGH and socially. When asked the names of employees she knew at SINGLETON'S, MANGANO stated she knew RAFAEL, AMOL, GIL, and SINGH's mother, "MAMA". SINGH typically sat at SINGLETON'S at a table by the partition.

MANGANO also claimed to have done three or four tastings as part of her employment for SINGH. One tasting was at FUEGO PICANTE. Approximately twenty five people attended the tasting. When asked if she arranged the tasting or sent out invitations, MANGANO stated she did not. MANGANO attended the tasting because SINGH wanted her opinion of the food. MANGANO did not recall who else attended the tasting. MANGANO believed RUBY SINGH arrived at the event after it started. MANGANO claimed there may have been a tasting held at BESI as well but she could not recall for certain. ED MANGANO attended tastings with MANGANO.

MANGANO was also involved with one or two tastings at the CHOW DOWN DINER. The tastings occurred shortly after the renovations of the diner were complete. MANGANO consulted with SINGH regarding the name of the diner, suggesting he name it "Route 24". MANGANO further suggested names for food items such as the "Southern State burger", etc. MANGANO consulted with SINGH on the items to include on the menu and suggested he put pickles on the table. However, SINGH appeared to want more of a gourmet menu, including duck. MANGANO suggested more traditional diner food. When asked with whom she had discussions regarding the diner, MANGANO stated she spoke with SINGH directly. When asked if she knew the name of the chef at the time, MANGANO stated she did not. SINGH rotated the chefs from restaurant to restaurant. MANGANO spoke to SINGH extensively regarding colors and swatches. Most of the conversations were with SINGH directly.

When asked how often SINGH stopped at her house, MANGANO claimed SINGH stopped by approximately twice per week, sometimes more, sometimes less. SINGH came to MANGANO's house both during the day and at night. The MANGANO's house was close to SINGLETON'S so it was easy for SINGH to stop by.

LM000023

FD-302a (Rev 05-08-10)

Continuation of FD-302 of  Interview of Linda Mangano 05/20/2015  , On 05/20/2015 , Page 5 of 6

MANGANO never had set hours as part of her employment with SINGH. SINGH paid her to consult on a variety of different topics. Given their friendship, it was difficult for MANGANO to define what she did in her capacity as an employee versus what she did as a friend to SINGH.

MANGANO's attorney pointed out that MANGANO was not claiming to have performed a lot of work as part of her employment for SINGH. MANGANO stated that when she was initially hired by SINGH she thought it would be a "focused position". But, after she started there was "some work and then, a lull". When SINGH hired MANGANO, SINGH appeared to being doing very well, operating the WATER'S EDGE in the vicinity of Manhattan. However, MANGANO began to notice SINGH's financial position "started to decline" when SINGH sold his Maserati. SINGH and MANGANO's sons loved the Maserati. MANGANO knew SINGH was too proud to acknowledge he was having financial difficulty and claimed he sold it because the insurance payments were just too high. When SINGH sold the car, MANGANO felt there was something that just wasn't right. MANGANO spoke to her husband ED MANGANO about her thoughts regarding the sale of the Maserati and told him she suspected SINGH may be having financial issues.

MANGANO also began hearing rumors and "grumblings" regarding SINGH's decline. MANGANO decided to leave SINGH's employment because she didn't want to put SINGH in a position where he had to admit he was having financial problems. In March or April of 2014, MANGANO told SINGH she was leaving his employment.

When asked how she was paid during her employment with SINGH, MANGANO stated she received direct deposit. MANGANO did not recall her paychecks from SINGH being sent by mail. When advised she did not receive direct deposit, MANGANO stated ED MANGANO did all the banking and "handles the finances completely".

MANGANO was shown a copy of a check #12407, dated July 24, 2012, from the account of QUINN RESTAURANT CORP d/b/a THE WATER'S EDGE (Habib American Bank account #0701209587), for $3,172.52, made payable to LINDA MANGANO. MANGANO positively identified her signature on the endorsement of the check. When asked how her endorsement appeared on a check if it was part of a direct deposit, MANGANO stated she did not know. MANGANO assumed she received the check, signed it, and then provided it to her husband. After being shown the check, MANGANO and her attorney met privately.

After meeting with her attorney, MANGANO stated she must have confused the direct deposit she receives from her current job with PORTECH with her paychecks from SINGH. MANGANO believed her paychecks from SINGH were mailed to her home. MANGANO stated ED MANGANO went through the mail and MANGANO signed the checks and gave them back to ED MANGANO.

LM000024

FD-302a (Rev. 05-08-10)

Continuation of FD-302 of  Interview of Linda Mangano 05/20/2015  , On  05/20/2015  , Page  6 of 6

When asked if she was aware of anyone else, other than her or ED MANGANO, depositing her paycheck, MANGANO stated she was not.

When asked if she recalled SINGH ever delivering her paychecks to MANGANO's house, MANGANO stated she did not.

When asked if she recalled receiving checks from SINGH for even amounts such as $750 or $1,000, MANGANO stated she did not. Nor did MANGANO recall receiving any checks from SINGH other than typical payroll checks which included various deductions.

MANGANO was shown a copy of check #3936, dated July 21, 2014, from the QUINN RESTAURANT CORP (People's United Bank account #6500355533), for $750, made payable to LINDA MANGANO. MANGANO stated the endorsement on the back of the check was neither her signature nor that of her husband ED MANGANO. MANGANO was not aware she had received any checks from which the typical payroll deductions had not been made. MANGANO recalled owing extra taxes for 2014 after her accountant, JOE CANNIZZARRO (phonetic) of Melville, told her not enough taxes had been withheld from her paychecks. MANGANO could not explain why she had received checks for $750 from SINGH.

When asked the last time she spoke to SINGH, MANGANO stated SINGH had come to her house the prior day.

At this point, MANGANO's attorney indicated he wanted to speak with his client. The interview was concluded and was rescheduled to resume on May 22, 2015.

LM000025