FD-302 (Rev. 5-8-10)



OFFICIAL RECORD

# FEDERAL BUREAU OF INVESTIGATION

Date of entry    06/12/2015

LINDA MANGANO, date of birth, 03/07/1963, Social Security Number 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, 7 Nicholas Court, Bethpage, NY, was interviewed, pursuant to a proffer agreement, at the Eastern District of New York, Central Islip, New York with Special Agents Daniel Schlyer and Paul Rooney, IRS Criminal Investigative Division and Assistant United States Attorneys (AUSA) Catherine Mirabile, Raymond Tierney, and Lara Treinis Gatz. MANGANO was represented during the interview by John Carman, Esq. AUSA Mirabile briefly explained the meaning and details of the proffer agreement. After signing the agreement, MANGANO provided the following:

MANGANO went home after Wednesday's proffer (5/20/15) and looked at her own finances with ED MANGANO (ED). HARENDRA SINGH (SINGH) stopped by MANGANO's house at about 4:00 pm on 5/20/15. SINGH knocked on the door right when MANGANO was going through the finances. MANGANO usually leaves the door unlocked and SINGH would normally walk right in. This time the door was locked and MANGANO asked ED what she should do regarding SINGH being at the door. ED told MANGANO that they needed to let SINGH in. MANGANO initially stated that SINGH just "randomly" showed up. Then she stated she did not know if ED had spoken to SINGH that day or whether ED knew if SINGH was coming over.

During SINGH's 5/20/15 visit at the MANGANO home MANGANO advised that she spoke to SINGH about whether her checks were direct deposited. SINGH told MANGANO that the checks were direct deposited and that the process of having someone sign the check and deposit it into the employee's account is something he has done with other employees. In 2013 SINGH was given the MANGANO bank account information, presumably by ED, and began depositing MANGANO's checks. MANGANO asked SINGH about the direct deposit checks shown to her during the 5/20/15 proffer (endorsed by neither MANGANO or ED) because she "needed to know". MANGANO also asked SINGH during his visit on 5/20/15 why he continued to pay her after she stopped working for him. SINGH told MANGANO that he owed her and he was making up the money he had

Investigation on  05/24/2015  at  Central Islip, New York, United States (In Person)

File # ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮                                    Date drafted  05/24/2015

by  SPENCE LAURA ANN, HOSEY KENNETH F

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

LM000037

not yet paid her for her work. According to MANGANO, ED told her that in the summer of 2014 SINGH told ED that he still owed MANGANO money. SINGH explained to MANGANO that her payments stopped at the end of 2013 beginning of 2014. MANGANO stated that when SINGH asked her how the interview went, all she spoke to SINGH about was the question about the checks and whether they were direct deposit. SINGH stayed at the MANGANO home for about one hour on 5/20/15.

MANGANO stated that she did not realize she wasn't getting money during the months leading up to her leaving SINGH's employment. "I didn't know I was getting those checks." ED did not notice the lack of money coming into their account at this time either. MANGANO stated that they have a Line of Credit (LOC) for their son's college payments and when the account got low ED would transfer money from the LOC into their account and, therefore, didn't notice the lack of upwards of $6,000 a month. Also, neither MANGANO nor ED noticed the deposits starting up again and being placed into their account by someone other than MANGANO or ED. MANGANO had a conversation with ED about how neither of them noticed the large chunk on money being deposited into their account. MANGANO claimed ED was very busy with work.

MANGANO reiterated from the prior proffer that in April of 2014, MANGANO told SINGH she was leaving his employment. MANGANO was in her home with ED and SINGH when she told SINGH she was leaving.

MANGANO stated she did not handle the finances and that ED was the one who went to the bank and took cash out when needed.

SINGH also came to the MANGANO home on 5/19/15, the day before the first proffer. SINGH was aware MANGANO was going to be coming to Central Islip for a proffer. MANGANO stated this visit was a social one and no lengthy discussions were had in regards to the next day proffer. SINGH stated to MANGANO during this visit that he felt terrible and discussed how he and MANGANO were life long friends. SINGH did not give MANGANO advice and MANGANO stated "I don't believe he [SINGH] gave me advice". MANGANO did not discuss why SINGH had stopped the withholdings from her paycheck. MANGANO uses MARCUM (phonetic), based out of Bethpage, for her accounting.

MANGANO stated that they got a W2 for $4,400 and ED said to SINGH that there should be more money on it. SINGH stated that there must have been a mistake and SINGH gave them a new W2. MANGANO met with her accountant close to April 15th and the accountant told ED and herself that they had to pay money for taxes because nothing was withheld. MANGANO stated that she owed money because something on SINGH's end was done wrong.

MANGANO stated that she asked ED about trips they went on with SINGH. ED told MANGANO that SINGH used his points for the Turks and Caicos trip.

FD-302a (Rev 05-08-10)

Continuation of FD-302 of  Linda Mangano Proffer on 5/22/2015  , On  05/24/2015  , Page  3  of  7

MANGANO was present when ED asked SINGH to let him know what ED owed him for the trip. SINGH paid by points in regards to the airfare as well as hotel stay. MANGANO and ED paid for lunches at the grill, dinners, and a boat trip with the kids.

In July 2014, the MANGANO family traveled to Disney for four days and then met SINGH and his family at Amelia Island in Florida. MANGANO did not know who paid for the flight to Amelia Island or the hotel stay while there. In Disney the MANGANO family stayed at the Swan and Dolphin Resort and in Amelia they stayed at the Carlton.

The MANGANO family visited SINGH's brother in Saratoga and stayed at his brother's home.

The MANGANO family drove to Niagara Falls. MANGANO stated that they all drove. They also went on day trips with the SINGH family. One place she remembered was a car show.

There was a planned trip for both families to go to St. Thomas but they didn't go and MANGANO can not remember why. SINGH was trying to get a credit for the already purchased tickets.

MANGANO did not know who paid for any of these trips. MANGANO stated "Again, I don't do the finances".

MANGANO's topics of discussion with SINGH pertaining to her proffer revolved around the checks, employment, and payment for the trip to Turks and Caicos. SINGH told MANGANO that they are friends and so it was not an issue [the trip]. As far as overpaying her, SINGH stated to MANGANO that he was pleased with her work and that she did the work he asked her to do at Water's Edge.

MANGANO believed that she was an employee of SINGH and stated "I don't know if I was full time" and "I wouldn't say that H's job required full time".

MANGANO never submitted any bills to SINGH for her work. There was no work email address attached to her. MANGANO did not have an office at any of SINGH's establishments. There were no expectations for her to be in the office.

SINGH was aware of the obligations that MANGANO had with her publications and ED's job regarding county level events she needed to attend.

MANGANO is unaware of what is on her resume. She did not use one to get

LM000039

FD-302a (Rev 05-08-10)

Continuation of FD-302 of Linda Mangano Proffer on 5/22/2015 , On 05/24/2015 , Page 4 of 7

her most recent job at PORTECK. MANGANO's biographical sheets (bios) don't list her employment with other organizations. The only thing she identifies herself with is her newspaper. MANGANO sees herself as an editor and publisher. MANGANO's bios are more about her charitable endeavors and awards.

Graphic designers can be paid in many ways such as per page, conceptually based, project based, and per hour.

After the second visit, February 6, 2015, to MANGANO's home by SAs Hagarty and Spence, MANGANO had a conversation with SINGH about the visit. SINGH spoke to MANGANO about FRED IPPOLITO and that there were issues in the Town of Oyster Bay (TOB). MANGANO does not think that IPPOLITO and SINGH have a good relationship. MANGANO's opinion is that SINGH believes IPPOLITO is the root of all of SINGH's problems. SINGH stated to MANGANO that IPPOLITO was a bad guy and that IPPOLITO strong arms people. SINGH intimated to MANGANO that he himself was strong armed by IPPOLITO. MANGANO stated that SINGH was pressured by IPPOLITO but didn't know how or when. SINGH had trouble from the get go with Christiano's and SINGH stated he wished he never got involved in that deal. MANGANO is not aware of any illegitimate transactions regarding SINGH's dealings with IPPOLITO or Christiano's.

MANGANO, in reference to the TOB, stated "H does not need my husband to embed himself in that realm". SINGH has strong relations with the TOB to include JOHN VENDITTO, JOSEPH MUSCARELLA, and every councilman.

MANGANO is unaware of any payoffs. MANGANO was aware of discounted weddings for people but "that is how he [SINGH] is". MANGANO was not able to provide any names of people that received discounts from SINGH.

MANGANO was unsure how her son, SAL MANGANO, got to a concert at the Barclay Center.

MANGANO never took a car service that was paid for by SINGH. MANGANO did not remember taking a car service anywhere, to include the airport.

MANGANO could not remember what she did for SINGH, employment wise, during the months of January through April of 2014.

MANGANO, SINGH and ED always joked that ED was working much more now and getting paid less as the County Executive.

MANGANO could have been employed for MIKE MONTESANO as he was looking for someone to be his aid. MANGANO would be hired to do consultant work for

LM000040

FD-302a (Rev 05-08-10)

Continuation of FD-302 of Linda Mangano Proffer on 5/22/2015, On 05/24/2015, Page 5 of 7

$80,000 a year. MANGANO turned it down and "backed out" because she thought it would be a big story that ED takes office and MANGANO gets this job.

MANGANO could have also gotten a job with VENDITTO's son but she "backed out" of that because she was afraid of "the reflection".

MANGANO had a discussion with DEAN SKELOS about doing news letters for him but MANGANO also turned that down. MANGANO was never offered a position in Albany and would never accept the offer if there was one. MANGANO was adamant that no offer regarding working out of Albany was ever made to her.

MANGANO stated that ED never did favors for SINGH. MANGANO further stated that "if ED advocated for H it would do more harm". SINGH knows all the players himself and doesn't need ED's "leverage". It would surprise her if ED would do favors for SINGH. ED has said no to SINGH in the past. MANGANO stated that ED has told her "I have had to tell him no". MANGANO had no further details on what SINGH requested of ED or why ED said no. MANGANO was unfamiliar with Small Business Account (SBA) loans and did not know anything about them in relation to ED or SINGH.

MANGANO stated that she was aware of the FBI search warrant at SINGLETON's "well after" it was executed. MANGANO then stated the first time she heard about the search was when someone called ED on the telephone and told him. ED then told MANGANO what he had heard. MANGANO stated it was the day of the search and she doesn't think it was SINGH that called ED to tell him. Once MANGANO learned about the search she stated that she did not call SINGH to find out any details or whether it was true.

Some time after the search MANGANO spoke with SINGH and SINGH stated that the FBI took "stuff" and that they [the FBI] went and spoke to his parents. SINGH told MANGANO that everything was ok and MANGANO did not believe that was the case.

SINGH has told MANGANO that he has made mistakes but that he is not a bad person or criminal.

In April of 2014, MANGANO told SINGH she was leaving his employment. MANGANO was in her home with ED and SINGH when she told SINGH she was leaving. SINGH's visits at MANGANO's home never changed from when she was employed with him to when she stopped working for him. SINGH is over the MANGANO's home pretty consistently.

In total, SINGH and MANGANO have spoken about the investigation and MANGANO's involvement. SINGH may have told her to tell the truth. SINGH told MANGANO that, for him, she was a good worker. SINGH asked MANGANO if the FBI knew they were life long friends. SINGH stated to MANGANO that

FD-302a (Rev 05-08-10)

Continuation of FD-302 of  Linda Mangano Proffer on 5/22/2015         , On  05/24/2015 , Page  6 of 7

there was nothing wrong with paying her. MANGANO told SINGH that the Special Agents asked about her working at WATER'S EDGE. MANGANO asked SINGH if he remembered the woman's event that she helped SINGH with during her employment and asked SINGH if he knew the woman that was honored.

MANGANO said RUBY SINGH (RUBY) was nice but that they were not "shopping buddies". MANGANO stated her relationship was with SINGH. RUBY came into the country in the late 80's early 90's. The SINGH's and MANGANO's celebrate holidays together. RUBY and her children were at the MANGANO's for ALEX MANGANO's (ALEX) graduation party. SINGH gifted ALEX $251.00 for his graduation. ALEX ripped up the check because he didn't want to attach himself or his family to SINGH. MANGANO stated that ALEX worked at the AUSA's office in Central Islip and wants to be "one of you".

MANGANO is unaware of SINGH obstructing the investigation. MANGANO would be "stunned" if SINGH bribed officials. At this point, MANGANO was advised that SINGH has in fact bribed certain individuals and told that FRED MEI was one individual that was involved in said bribery. MANGANO knew of FRED MEI but was unsure if she had ever met him.

SINGH visits ED at work often.

MANGANO circled back to the MANGANO bank account and stated that ED looks at the end amount and as long as the end amount covered checks "that is all that mattered". ED's focus at that time was not on the bank account. MANGANO bounced checks because MANGANO wasn't aware of the money not being there.

MANGANO would never admit that her job with SINGH was a no-show job. There were times when MANGANO asked SINGH for work. MANGANO and SINGH both expected her job to be more than it was.

SINGH did not use all of MANGANO's ideas or creations. The final product SINGH used was not always hers.

MANGANO recently spoke with JOHN CONWAY. CONWAY and SINGH stopped by MANGANO's house within the last two weeks and stayed about 1/2 and hour. This meeting was sometime before the first proffer. ED was there as well. CONWAY told MANGANO that the agents were going to ask her about her employment and what she did for SINGH. CONWAY told her to just tell the truth. MANGANO remembers crying and CONWAY and SINGH had come to her home to calm her nerves. CONWAY explained to MANGANO she would be brought into a room and asked questions. CONWAY told her the people asking her questions would be very nice to her. MANGANO was nervous and CONWAY and SINGH were trying to put her at ease. CONWAY gave her an overview of what to expect

LM000042

FD-302a (Rev 05-08-10)

Continuation of FD-302 of  Linda Mangano Proffer on 5/22/2015   , On  05/24/2015  , Page  7 of 7

for the proffer. The conversation was also about the crumb cake she made and MANGANO's dogs.

According to MANGANO, ED stated "this is about me. It's not about my wife." CONWAY laughed and discussed how ED was an elected official.

SINGH constantly stated that MANGANO was his friend during this meeting. CONWAY stated that this is about SINGH and that SINGH needed to fix his own problems.

MANGANO did not find it strange that CONWAY stopped by with SINGH. SINGH has brought others with him, such as KAMLESH MEHTA, when stopping by the MANGANO home. Neither CONWAY or SINGH asked for papers or anything from her during this visit.

ED knew that CONWAY and SINGH were coming because MANGANO remembered waiting for CONWAY and SINGH to arrive. Therefore, ED "must have known".

CONWAY is involved in the charity that SINGH runs. MANGANO knows CONWAY through this charity as well.

MANGANO never received cash for compensation from SINGH. MANGANO never received a check made out to cash.

**Administrative Note:** Two sheets of paper identifying the deposits relating to MANGANO's employment with SINGH for 2013 and 2014 were provided to the agents by MANGANO's attorney, John Carman. The documents have been attached hereto in a 1A.